[No. 22335. Department One. April 28, 1930.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANKLYN
G. CLARK, *Appellant*.[1]

*Bertil E. Johnson, Ray C. Roberts,* and *Byron D.
Scott,* for respondent.

*J. Peter Healy,* for appellant.

MILLARD, J.—Defendant was convicted of the crime
of forcible rape and has appealed from the judgment
and sentence.

About four o'clock of the afternoon of December 6,
1928, the prosecuting witness, age fourteen years, de-
parted from school at Roy, Washington, for her home.

[1]Reported in 287 Pac. 18.

While following a trail through a wooded section, a man jumped out behind the girl from a blind alongside the path, bound a white cloth over her face, picked her up from the ground where she had fallen, carried her some distance further into the woods and forcibly had sexual intercourse with her. Upon the consummation of the crime, the cloth was removed from the girl's face and she was permitted to arise. She then for the first time saw the man who had assaulted her. He had on dark overalls, a dark coat and cap, brown high-topped shoes, with the overalls rolled up a short distance. He also had a mask of white cloth over his face. At the trial the girl identified the cloth which the man had tied about her face from the peculiar odor with which it was charged and which sickened her and made it difficult for her to breathe while it was over her face. The cloth identified by the girl is one that was taken from the suitcase of the appellant at the time of his arrest. Upon her release, the girl, when she got back to the trail, turned and saw the man standing. She ran to her home and there related the occurrence to her mother.

That evening the appellant was arrested in his room in a hotel at Roy, where was found a dirty cloth wrapped up in a clean towel, and both tucked away in his suitcase. Upon the appellant was found a three-bladed knife, one blade of which was covered with pitch. Between four and five p. m., the afternoon of the crime, the appellant brought three cedar boughs into the kitchen of the hotel where he lived. The appellant admitted that the three boughs which were introduced in evidence, were cut by him with the knife taken from his person.

At the point where the man jumped from the woods on to the girl while she was walking along the trail, was a blind consisting of fir saplings laid against a fir

tree, the fir tree standing alongside the trail. The fir saplings had been cut with a knife and the cut ends were sticking in the ground, and the ground directly under the lower branches of the fir tree and behind the fir saplings had been freshly disturbed. It appears from the evidence clearly that the fir saplings which were cut for the construction of the blind and the three cedar boughs appellant admitted cutting with his knife were all cut by the same blade. It was the theory of the state that the appellant prepared the blind a few days prior to the assault and there laid in wait to attack the girl.

About the same hour of the afternoon (three forty-five p. m.), three days prior to the commission of the crime, the appellant was seen in the woods near where the assault took place and was at that time unable to give a satisfactory explanation to one who asked him what he was doing. One witness saw the prosecuting witness walk down the trail leading into the woods near the scene of the crime about five minutes after four December 6, 1928, and about four-thirty p. m. a man came out of the woods and crossed a field in a northerly direction and in the direction of the cedar tree from which three branches were cut with the knife taken from the appellant. The man had his collar pulled up in a manner to conceal his head. Another witness saw the appellant, about three-thirty p. m., about one-half to three-quarters of an hour prior to the commission of the crime, on the railroad tracks east of Roy. At that time the appellant had on high-topped shoes with his overalls rolled up a short distance.

During the assault, the man talked to the girl. She also heard the appellant talk the night of December 6, shortly after he was arrested. She testified that the voice of the appellant was the same as the voice of the

man who attacked her. She saw the man in the woods stand up, and she testified at the trial that the appellant was the same height as the man who attacked her and was of the same general size. The fir saplings forming the blind and the three cedar boughs appellant admitted he cut were introduced in evidence, and the photographs of the cut surface of each of the saplings and each of the cedar boughs were submitted to the jury as evidence that the same knife, that of appellant, cut all of them. Appellant was found guilty as charged and sentenced to serve a penitentiary term of from twenty to thirty years.

Counsel for appellant complains that he was not permitted to inspect a sworn statement obtained by the prosecutor from the appellant between the time of appellant's arrest and the time the information was filed. He also assigns as error the refusal to permit him to inspect certain articles taken from the appellant.

■ The state did not make any use of the written statement on the trial of the appellant. If the appellant could disclose information to the prosecuting attorney, he certainly could have given the same information to his counsel. If the state had introduced the statement to impeach the testimony of the appellant, a different question might have been presented. However, the statement was not used, nor did the appellant take the stand in his own behalf. While the jury were instructed that no inference of guilt should be drawn from failure of the appellant to take the stand, it does not follow that we can infer, as suggested by argument of counsel, that failure of appellant to testify was due to fear of impeachment by the written statement he had made to the prosecuting attorney. Counsel may know that appellant did not take the stand because of that, but we do not know it, nor may we so assume.

found upon the person of the appellant. One blade of that knife was covered with pitch. The appellant admitted that he had that day cut three cedar boughs with the pitchy blade. The blind behind which the man hid who assaulted the prosecuting witness consisted of fir saplings laid against a fir tree. The fir saplings had been cut with a knife and the cut ends were sticking in the ground. A yew tree branch was found a short distance from the blind. The photomicrographs of the cuts on the cedar boughs, which the appellant admits cutting with the knife taken from him, and of the surface of the cuts on the yew tree branch and fir saplings conclusively establish, we are convinced, as doubtless the jury were, that the cuts were made with the same blade. The cedar boughs which the appellant admits cutting were cut from a tree twenty-four hundred feet from the place where the crime was committed, and were cut almost immediately following the commission of the crime. The cedar limbs that appellant admitted cutting, the stubs from the cedar tree from which the limbs were cut and the knife with which appellant confessed the branches were cut were admissible upon the theory that they established the fact that appellant was in the vicinity (twenty-four hundred feet distant) of the scene of the crime at approximately the time the crime was committed.

That the knife cuts on the fir saplings found in the blind and the knife cuts on the branch from the yew tree were made by the same blade the expert witness testified was demonstrable. The testimony of that expert, coupled with the photomicrographs of the fir and cedar bough surface cuts, should be admitted. A question of fact was presented for determination by the jury.

Courts are no longer skeptical that, by the aid of scientific appliances, the identity of a person may be

established by finger prints. There is no difference in principle in the utilization of the photomicrograph to determine that the same tool that made one impression is the same instrument that made another impression. The edge on one blade differs as greatly from the edge on another blade as the lines on one human hand differ from the lines on another. This is a progressive age. The scientific means afforded should be used to apprehend the criminal.

"Progressive and scientific processes and appliances which belong to the various human endeavors belong equally to the machinery of the law." *State v. Kuhl,* 42 Nev. 185, 175 Pac. 190.

An apt authority is *People v. Jennings,* 252 Ill. 534, 96 N. E. 1077, wherein the court said, referring to the admissibility of finger-print evidence:

"We are disposed to hold from the evidence of the four witnesses who testified, and from the writings we have referred to on this subject, that there is a scientific basis for the system of finger print identification, and that the courts are justified in admitting this class of evidence; that this method of identification is in such general and common use that the courts cannot refuse to take judicial cognizance of it. Such evidence may or may not be of independent strength, but it is admissible, the same as other proof, as tending to make out a case. If inferences as to the identity of persons based on the voice, the appearance, or age are admissible, why does not this record justify the admission of this finger print testimony under common law rules of evidence. The general rule is that whatever tends to prove any material fact is relevant and competent."

The facts in *State v. Fasick,* 149 Wash. 92, 270 Pac. 123, 274 Pac. 712, distinguish that case from the case at bar. In the *Fasick* case there was only one mark on the two pictures admitted in evidence which compared one with the other. In the case at bar there are more than fifty marks appearing on the pictures of the cut

surfaces of the fir boughs which can be identified as appearing on the cut surfaces of the cedar boughs. In the *Fasick* case it does not appear that the knife was the property of the appellant. In the case at bar the ownership of the knife was admitted as was the cutting of the cedar boughs, the surface cuts of which were used for comparison with the surface cuts of the fir saplings. The evidence tended to prove that the knife blade that cut the cedar boughs cut the fir saplings. It was very material who cut the fir saplings and constructed the blind alongside the trail. The one who cut the fir saplings and made the blind doubtless committed the criminal assault.

Finding no error justifying reversal, the judgment is affirmed.

MITCHELL, C. J., PARKER, BEALS, and TOLMAN, JJ., concur.