[No. 36281.   Department Two.   March 14, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. LEVI BRIDGES, *Appellant.**

*William F. Lockett*, for appellant.

*Charles O. Carroll, Joel A. C. Rindal*, and *Richard M. Ishikawa*, for respondent.

WEAVER, J.—Defendant was charged, convicted, and sentenced for the crimes of burglary in the first degree, rape and sodomy.

His two assignments of error pertain only to his conviction for the alleged rape; therefore, we notice only those facts necessary to consider the assignments.

The prosecuting witness, aged 22, and two girl friends had just moved into a small house on Capitol Hill in Seattle. April 30, 1961, they returned home late at night, readied

*Reported in 379 P. (2d) 715.

themselves for bed, and watched the late show on television. The front porch light remained lighted since the prosecuting witness was expecting her younger sister and girl friend to spend the night with her; they were to help clean house the next day.

While the other two girls fell asleep, the prosecuting witness remained awake. Hearing a noise emanating from the vicinity of the back porch, and thinking her younger sister and friend were arriving, she got out of bed to greet them. She saw two male figures on the back porch. She awakened one of the other two girls and reported what she had seen.

Approximately 10 minutes later (about 1 a.m.), the sister of the prosecuting witness arrived with her friend. The five girls went to bed. Shortly thereafter, the prosecuting witness again heard noises and footsteps on the front porch. She awakened the other girls and attempted to telephone the police; the telephone was dead. There is conclusive evidence that the telephone wire was cut. The front porch light was now inoperative. Upon hearing a noise of prying at the front door, the five girls bolted into the bathroom, a small interior room without windows, and locked the door.

Although there were three locks on the front door, the door jamb was torn off. The girls heard a crowbar being used on the French doors between the living room and the bedroom, although the doors were not locked. The switch to the bathroom light was in the bedroom; the light was flicked on and off.

As the crowbar was being applied to the bathroom door, the prosecuting witness yelled, "Whoever you are looking for doesn't live here any more and please go away." She said that if the light were turned on, they could see that this was true. The prowlers replied, "All right." The door was opened.

For the first time the girls saw the two men—initially described as "the tall man" and "the short man." Four of the five girls identified defendant as "the short man."

The prosecuting witness testified that defendant came

in with ". . . a crowbar up over our heads and said if we—he said, 'If you do anything, I'll smash your heads in.'" Her testimony was corroborated by the testimony of the other girls.

While the defendant stood at the bathroom door with the crowbar, his accomplice took one of the girls into the bedroom. We do not set forth that sordid story. It is sufficient to say that the girls in the bathroom could hear her plaintive protestations.

The prosecuting witness testified: that defendant took her into the bedroom; that he committed an act of sodomy; that he assaulted her sexually without her consent; that ". . . he had that crowbar right by my head"; that she did not offer any particular resistance because "I just figured all he had to do was pick up that crowbar and let me have it in the head like he said he was going to."

It is true that on cross-examination the prosecuting witness testified that she was afraid both for herself and for her younger sister, and that if her sister had not been there, "I would have probably fought."

In so far as it is applicable to defendant's first assignment of error, RCW 9.79.010 provides, in part:

"Rape is an act of sexual intercourse with a female not the wife of the perpetrator committed against her will and without her consent. Every person who shall perpetrate such an act of sexual intercourse with a female of the age of ten years or upwards not his wife;
"(1) [not applicable]
"(2) When her resistance is forcibly overcome; or
"(3) When her resistance is prevented by fear of immediate and great bodily harm which she has reasonable cause to believe will be inflicted upon her; . . .
" . . .
"Shall be punished . . ."

The court instructed the jury that in order to convict defendant of rape, the state must prove, among other things:

"That the resistance of the said [name omitted] thereto was forcibly overcome, or
"That the said [name omitted] was prevented from of-

fering resistance by fear of immediate and great bodily harm which she had reasonable cause to believe would be inflicted upon her; . . ."

Defendant contends that, under the statute and the instruction, quoted *supra*, the evidence is insufficient to support a verdict of guilty.

■ "Resistance," mentioned in the statute, is not one of the elements of the crime of rape; it is evidence of want of consent which is an element. *State v. Meyerkamp*, 82 Wash. 607, 144 Pac. 942 (1914).

■ Whether the resistance of the prosecuting witness was prevented by fear of immediate and great bodily harm which she had reasonable cause to believe would be inflicted upon her, was a question of fact to be determined by the jury. *State v. Baker*, 30 Wn. (2d) 601, 192 P. (2d) 839 (1948).

On at least three occasions, the prosecuting witness testified that she was frightened and shaking uncontrollably during the episode. One cannot read the typewritten pages of the testimony of the five girls, one of whom fainted during defendant's presence in the house, without sensing the utter terror, stark fear, and trepidation experienced by them.

It is inherent in the jury's verdict that it found the resistance of the prosecuting witness had been overcome by fear of immediate and great bodily harm. The presence of the crowbar beside her head during the rape was sufficient to submit the question to the jury. Add to this the dread and alarm occasioned by the presence and conduct of defendant and his accomplice, and we are satisfied that the jury could not have arrived at any other conclusion.

We find no merit in defendant's first assignment of error.

As to his second assignment of error, defendant states:

"The Court erred in admitting testimony derived from a medical report over defendant's objection."

The assignment of error is not accurate. While one of the detectives of the Seattle Police Department was on the stand, the court ruled:

" . . . the officer may relate what, if anything, he said to the defendant and what the defendant replied to him."

The detective testified he made a statement to defendant based upon one of the findings of a medical report (not in evidence) of a physical examination of the prosecuting witness. He testified that this evoked a statement from defendant, which, if believed by the jury, would constitute an admission against interest.

Reference to the medical report was not for the purpose of establishing its truth or falsity; it was only to lay a foundation for defendant's subsequent admission against interest.

In his brief, defendant states:

" . . . It is not the contention of the defendant here that the admission was secured by deception and inadmissible, but that it was prejudicial. . . ."

We find no merit in defendant's second assignment of error.

The judgment is affirmed.

OTT, C. J., DONWORTH, FINLEY, and HAMILTON, JJ., concur.

---

May 20, 1963. Petition for rehearing denied.