[No. 36282. Department Two. March 21, 1963.]

THE STATE OF WASHINGTON, *Respondent,* v. BARRETT PITMON, *Appellant.*\*

*William F. Lockett,* for appellant.

*Charles O. Carroll, Joel A. C. Rindal,* and *Richard M. Ishikawa,* for respondent.

\*Reported in 379 P. (2d) 922.

FINLEY, J.—The defendant was charged by information with the commission of five criminal offenses: Count I, burglary in the first degree; Count II, rape; Count III, carnal knowledge; Court IV, sodomy; Count V, rape. The criminal offenses in Counts II, III and IV concerned a 17-year-old female person. Count V concerned a young female person over the age of 18 years. After conviction and sentencing on all five counts, the defendant appealed.

The details of this sordid saga of sex savagery, sex perversion, rape and criminal vandalism are set out for the most part in *State v. Bridges* (1963), *ante* p. 625, 379 P. (2d) 715. Therein, appellant Barrett Pitmon's partner in crime was separately tried and convicted. We affirmed the judgment of the trial court. The activities of the two criminal offenders are so interrelated that we incorporate, by reference herein, the factual narration in *State v. Bridges, supra.*

The appellant herein contends that the trial judge committed error in requiring him to stand up in court, in the presence of the jury, for observation and possible identification by a witness for the state. Although it is not clear from the brief or oral argument, this is the *only* assignment of error which seems to relate to all five counts on which the appellant was convicted. The appellant is not contending that his being forced to exhibit himself before the jury resulted in a violation of the constitutional protection against self incrimination which is afforded to an accused. Such a contention would be answered squarely by the decision in *State v. Clark* (1930), 156 Wash. 543, 287 Pac. 18, that such an exhibition does not violate the constitutional protection against self incrimination.

One of the first witnesses called by the state was one of the five girls who were present in the home the night these alleged criminal offenses occurred. This witness fainted shortly after the arrival of the appellant and his companion, and did not revive until shortly before their departure. The prosecutor asked, on direct examination:

"Q. All right. Would you be able to identify him [Pitmon]?

"A. Well, as far as height and his outline features, I could."

The prosecutor then asked that the appellant be required to stand; and, after the trial judge overruled objections, the appellant arose and then sat down again. The questioning of the witness by the prosecutor continued:

"Q. I am going to ask you one question, Miss . . . Does the defendant Barrett Pitmon fit the outline that you saw rush into the bathroom, so far as size and shape and general outline?

"A. Yes, he does."

■ The contention of the appellant is that his being compelled to stand, under these circumstances, resulted in a denial of a fair and impartial trial. It appears to us that the only circumstances under which that contention might have some validity would be if there was a dispute as to the identity of the defendant. In the instant case there is no dispute as to his identity; not only was he identified by several of the young girls, victims or hostages, who were unwillingly involved in appellant's sex safari, but in the present appeal appellant is not disputing that he was present and did in fact commit certain physical acts at the scene of the crimes alleged in the five counts. Appellant makes no other argument in this appeal, except on the question of whether the act of sexual intercourse was engaged in with the "consent" of the victim. We find the assignment of error, discussed hereinbefore, to be frivolous and without merit.

The appellant's remaining assignments of error only relate to his conviction of rape under Count V. RCW 9.79.010, insofar as pertinent here, provides:

"Rape is an act of sexual intercourse with a female not the wife of the perpetrator committed against her will and without her consent. Every person who shall perpetrate such an act of sexual intercourse with a female of the age of ten years or upwards not his wife:

"(1) [not applicable]

"(2) When her resistance is forcibly overcome; or
"(3) When her resistance is prevented by fear of immediate and great bodily harm which she has reasonable cause to believe will be inflicted upon her; . . .
" . . .
"Shall be punished . . ."

 The appellant concedes that the jury was properly instructed as to the question of rape. The theory of his defense, as indicated above, is that the victim of the rape charged under Count V was passive, offered no resistance, and, therefore, in fact and in law, consented. Appellant contends that the evidence does not indicate circumstances of duress, force, or fear of immediate danger or serious bodily harm on the part of the victim which would have overcome or prevented resistance on her part. In a nutshell, appellant's contention is that the evidence in this case was insufficient to support a verdict of guilty under the statutory definition of rape. The law relative to the factors of resistance, consent, or lack thereof, is set out adequately in *State v. Bridges, supra*:

" 'Resistance,' mentioned in the statute, is not one of the elements of the crime of rape; it is evidence of want of consent which is an element. *State v. Meyerkamp*, 82 Wash. 607, 144 Pac. 942 (1914).

"Whether the resistance of the prosecuting witness was prevented by fear of immediate and great bodily harm which she had reasonable cause to believe would be inflicted upon her, was a question of fact to be determined by the jury. *State v. Baker*, 30 Wn. (2d) 601, 192 P. (2d) 839 (1948)."

In the instant case it remains necessary only to set out briefly portions of the evidence pertinent to appellant's assignment of error here under discussion. The state's witness, the female who was the subject of appellant's attentions, as alleged in Count V, testified as follows:

"Q. Then what occurred?
"A. And then he [the appellant] walked over to take me out of the bathtub.
"Q. What was your emotional condition at this point?

"A. I was terrified. And I just stood there. I was just frozen.

"Q. Then what occurred?

"A. I started to step out of the bathtub and I was shaking so hard I couldn't walk, and so he took my arm, and started to help me, and I took a few steps and had to stop because I was shaking, I could hardly walk. And then we walked further until just outside the bathroom door, or right beside the door.

" . . .

"Q. Then what occurred?

"A. And he stood there and told me he wasn't going to hurt me and did kiss me, and was, with his hands was feeling me. And we were just standing there, and

"Q. Were you still afraid at this point?

"A. Yes, I was.

"Q. Then what occurred?

"A. And then he acted like he was going to just do something standing right there and I said no, there's a bed right behind him and he said no, lay down on the floor, and I said no, there's a bed over there, and I started walking toward it and he started to grab me and then as he turned he noticed it also. And so he went over to the bed and I sat down on the edge of the bed, and he was standing and he started to take his pants off and he told me to take the bottoms of my pajamas off.

"Q. What were you afraid that they might do at this point?

"A. Afraid the whole time that any minute they were going to kill us or hurt us bodily somehow.

" . . .

"Q. Was this act [of sexual intercourse] done with or without your consent?

"A. Without my consent.

"Q. All right. Were you afraid at the time it was going on?

"A. Yes, I was.

"Q. Were you able to offer resistance?

"A. No, not actually, for fear.

" . . .

"Q. All right, Was there any time during the time intervening between this break-in that you have described and the time that the men left when you were not frightened?

"A. From the time they arrived until the time they left?

"Q. Yes.

"A. No, I was scared all the time."

On cross-examination the witness testified:

"Q. Was he standing between you and the other person?

"A. Well, I wasn't paying attention. I was too afraid of what he was going to do.

"Q. You had already had your assurance that he was not going to hurt you, had you not? You had assurance from the beginning, didn't you?

"A. There was no assurance in my mind."

The above-quoted testimony, taken from the record, if believed by the jury, would support the conviction and sentence respecting Count V. The jury obviously believed this testimony.

We find no merit whatsoever in appellant's assignment of error here under discussion, nor in his contentions and arguments with respect thereto. The action of the trial court with respect to all five counts should be affirmed. It is so ordered.

OTT, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.

April 24, 1963. Petition for rehearing denied.