# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

SIRRONE TERRELL NEWBERN,

Appellant.

DIVISION ONE

No. 79519-8-I

UNPUBLISHED OPINION

DWYER, J. — Sirrone Newbern was convicted of robbery in the first degree. On appeal, he contends that (1) the trial court violated his constitutional "right to present a defense" by ruling that he could not stand to show the jury his height without being called as a witness, (2) his trial counsel failed to provide him with constitutionally sufficient representation, and (3) the court erred by ordering Newbern to pay supervision fees as a condition of his community custody. Finding no merit to his constitutional and evidentiary contentions, we affirm his conviction. However, we remand to the superior court with instructions to strike the discretionary supervision fee.

I

On December 14, 2017, J.K.[1] sat behind the front counter in the office of his father's towing company. The company, R&R Star Towing, had just wrapped up its monthly, cash-only car auction. J.K. was playing with his phone and

---

[1] J.K. is a juvenile. Hence, we refer to him by his initials.

discussing baseball with the tow dispatcher, Brian Solak. The office was well lit with natural light as it was a clear day and the windows were unshaded.

Around noon, two men walked into the office and asked about buying a car. Solak told them that they had missed the auction that day, but that there would be another auction in January.

One of the men then drew what appeared to be a gun and pointed it at J.K. "[G]ive me the fucking cashbox," the gunman said before turning the gun on Solak. The other man then approached Solak and also demanded the cashbox, which Solak relinquished to the robber. The men then retreated back through the office's front door and "took off."

Meanwhile, one of R&R Star's tow truck drivers, Levi Harless, was working in the adjacent tow yard preparing to transfer the auctioned cars to their new owners. Harless heard the office door rattle and saw two men exit the office and run past him. One was concealing something as he ran, and Harless guessed that it was the auction's cashbox.

Harless gave chase. He watched the fleeing men get into an "[o]lder white—Oldsmobile car" that "[h]ad distinctive rust marks on it." Harless continued his pursuit but gave up when he realized that he would not be able to catch them. He met responding police officers and gave them a description of the vehicle and the men. The three witnesses, all Caucasian men, had observed that both the robbers were African-American men.

Soon thereafter, police officer Paul Bryan pulled over a car that matched the description given by Harless, inside of which sat three African-American

men.[2]  One of the men, Newbern, fled on foot.  After a brief chase, the officer apprehended him.

Police then drove J.K. to where Officer Bryan had detained Newbern. They pulled Newbern from the police car so that J.K. could see him and asked J.K. if Newbern was one of the robbers.  J.K. identified Newbern as the gunman. Harless had followed J.K. in his tow truck, and he identified Newbern as the man who had not been carrying the cashbox.

The State charged Newbern with robbery in the first degree.  At trial, J.K. and Solak identified Newbern as the gunman, while Harless identified him as the robber who had not been carrying the cashbox.

Newbern argued that the witnesses had mistakenly identified him as one of the robbers.  Newbern supported his theory by noting discrepancies between the witnesses' descriptions of the gunman and Newbern's actual appearance. For example, J.K., Solak, and Harless all testified that both robbers were about six feet tall with the gunman slightly shorter than the other robber.  However, Newbern is only five feet four inches tall.

Newbern chose not to testify.  However, his attorney requested that Newbern be allowed to "just stand up, physically, because there's so much about the defendant's appearance that is at stake here.  The jury can see for themselves whether he's a tall person or a short person . . . . It's non-testimonial. It's similar to O.J. trying on the glove, in my opinion."  The court responded that

_____

[2] The vehicle was a Buick, not an Oldsmobile as Harless had described, but it had the same distinctive marks.  Officer Bryan, a former member of an auto theft task force, testified at trial that the two cars are "similar style type vehicles."

"[t]he case law talks about the state not being able to do exactly this sort of thing. That's not evidence."

Later, after Newbern's last planned witness testified, the court reiterated that "you can't argue something about the defendant's demeanor or characteristics that may have been seen by the jury but weren't ever actually introduced into evidence. So I just want to make sure you are comfortable you have the evidence you think you need." Newbern's attorneys had considered the possibility of calling another witness to testify about Newbern's height. However, because Brian Jorgensen, a police detective called by the State, had testified to Newbern's true height on cross-examination, the attorneys decided that they had established a sufficient evidentiary record to advance Newbern's argument. Nevertheless, in a colloquy with the court, one of Newbern's attorneys asserted that he still wished to delay resting Newbern's case until the next morning so that he could look for case precedent to support his belief that Newbern could stand to show the jury his height. The judge agreed and excused the jury for the day.

The next day, Newbern's attorney reported that he "did not find any case law that says that I can do that physical demonstration with my client." He also noted that the court had already ruled "based on case law that [the court] know[s] does exist that says that you can't do certain things, or certain things cannot be argued." The attorney and the court then confirmed that the record reflected the detective's testimony that Newbern was five feet four inches tall and then continued on to other business.

At the trial's conclusion, the jury found Newbern guilty of robbery in the first degree. The court subsequently imposed a standard range sentence of 50 months of confinement. The court also imposed 18 months of community custody following confinement. It further imposed the mandatory $500 victim penalty assessment. The court found that Newbern was indigent and stated that it would "waive all other nonmandatory fees and costs." Nevertheless, the court's written order made payment of "supervision fees as determined by [Department of Corrections]" a condition of Newbern's community custody.

II

Newbern first contends that his constitutional "right to present a defense" was denied when the court prevented him from standing before the jury to demonstrate his height. This evidentiary ruling was error, he avers, because standing to show his height would have been nontestimonial demeanor evidence, something he believes case authority permits him to present. The State retorts that the court properly exercised its discretion and that Newbern's "right to present a defense" was not violated because Newbern's height was admitted into evidence through a witness' testimony, and Newbern was able to argue his misidentification theory to the jury. The State has the better argument.

The Sixth Amendment to the United States Constitution and article 1, section 22 of Washington's constitution guarantee a defendant's rights to compulsory process and to confront the witnesses against him. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. "Courts and litigants often refer to these rights, collectively, as the 'right to present a defense,' although this phrase does

5

not appear in our state or federal constitutions." State v. Bedada, No. 79036-6-I, slip op. at 6 n.2 (Wash. Ct. App. May 11, 2020), https://www.courts.wa.gov/opinions/pdf/790366.pdf (citing State v. Arndt, 194 Wn.2d 784, 789, 453 P.3d 696 (2019)).

As our Supreme Court has explained, appellate contentions that trial court evidentiary rulings violated a defendant's constitutional "right to present a defense" are reviewed under a two-step process. Arndt, 194 Wn.2d at 797-98. First, we review the challenged evidentiary rulings under an abuse of discretion standard. See Arndt 194 Wn.2d at 797-812. Then, if necessary, we review de novo whether such rulings violated the defendant's constitutional "right to present a defense." See Arndt 194 Wn.2d at 797-812.

A

Before considering Newbern's constitutional contention, we first address his argument that the trial court abused its discretion by not allowing him to stand for the jury to observe his height. Because the Supreme Court has advised against allowing a jury to consider evidence outside sworn testimony and admitted exhibits, we conclude that the court did not abuse its discretion.

"We review a trial court's decision to exclude evidence for abuse of discretion." State v. Franklin, 180 Wn.2d 371, 377 n.2, 325 P.3d 159 (2014). A trial court has only abused this discretion if its decision is "'manifestly unreasonable or based on untenable grounds or untenable reasons.'" State v. Dye, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013) (quoting In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)). A decision is manifestly

unreasonable if it is "'outside the range of acceptable choices, given the facts and the applicable legal standard.'" Dye, 178 Wn.2d at 548 (quoting Littlefield, 133 Wn.2d 39 at 47). Courts must "exercise reasonable control" over the presentation of evidence so as to make it "effective for the ascertainment of the truth" and to "avoid needless consumption of time." ER 611(a).

Our Supreme Court has expressed doubts about the appropriateness of a trial court allowing a jury to consider nontestimonial demeanor evidence. State v. Barry, 183 Wn.2d 297, 305 n.4, 352 P.3d 161 (2015). In Barry, the Supreme Court stated that "both parties and courts would be well advised to avoid drawing the jury's attention to subject matter outside the scope of admitted exhibits and the testimony of witnesses." 183 Wn.2d at 305 n.4. While this admonition falls short of a command to bar the admission of such evidence, it plainly demonstrates that barring evidence that is neither testimony nor an admitted exhibit is well within the range of acceptable choices for a Washington trial court.

Herein, the superior court properly exercised its discretion by not allowing Newbern to stand for the jury. Newbern sought to allow the jury to consider something beyond either the testimony of witnesses or the admitted exhibits. The court's decision to bar this was within its range of acceptable choices given existing case authority. Barry, 183 Wn.2d at 305. Furthermore, given that Newbern's height had already been testified to by Detective Jorgensen, we view the trial court's decision not to permit Newbern to stand before the jury as a proper exercise of reasonable control over the presentation of evidence so as to

make it "effective for the ascertainment of the truth" and to "avoid needless consumption of time." ER 611(a)

Nevertheless, Newbern avers that the trial court's decision was unreasonable, asserting that case authority supports his contention that the court should have allowed him to stand and present his height as nontestimonial demeanor evidence. He refers us to State v. Clark, 156 Wash. 543, 287 P. 18 (1930), to support this contention. Therein, the defendant argued on appeal that he had been forced to be a witness against himself when the trial court compelled him to stand and approach the testifying witness to be identified. Clark, 156 Wash. at 547. The Supreme Court disagreed and held that the privilege against self-incrimination does not extend to being made to stand for identification. Clark, 156 Wash. at 547-48.

Newbern contends that this demonstrates that the State may compel a defendant to present his physical traits as nontestimonial demeanor evidence, and so it follows that the court should allow a defendant to choose to present such evidence. Newbern is wrong. The court's purpose in forcing Clark to stand was to allow the witness to identify him in testimony on the record. Clark, 156 Wash. at 547-48. The evidence for the jury to consider was not Clark's appearance itself but, rather, the witness's testimony. Clark, 156 Wash. at 547-48. Thus, the opinion does not support Newbern's contention on appeal.[3]

---

[3] Newbern also references State v. Pitmon, 61 Wn.2d 675, 379 P.2d 922 (1963), to support his contention. In that case, as in Clark, the defendant was made to stand for the purpose of aiding in the witness's identification of him, which was memorialized in testimony on the record. Pitmon, 61 Wn.2d at 677. Pitmon no more supports Newbern's contention than does Clark.

The superior court reasonably exercised its discretion and committed no error.[4]

B

Having established that the trial court did not abuse its discretion, we now must determine whether the court's ruling violated Newbern's "right to present a defense." Because Newbern's height was properly admitted into evidence through witness testimony and because Newbern was permitted to rely on that evidence to argue to the jury that he had been misidentified as the gunman, his "right to present a defense" was not violated.

We consider de novo the question of whether a trial court's otherwise valid evidentiary ruling deprived a defendant of the "right to present a defense." Arndt, 194 Wn.2d at 797. "'The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.'" State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). What has come to be called the "right to present a defense" is not absolute, and courts may still place reasonable restrictions on what they admit as evidence at trial. State v. Donald, 178 Wn. App. 250, 263-64, 316 P.3d 1081 (2013). In determining whether the right has been violated, "the State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." Arndt, 194 Wn.2d at 812. If an

---

[4] For the same reasons, we also reject Newbern's contention that the court erred in not allowing Newbern to show the jury that he was missing a pinky finger. The court's decision to not direct the jury's attention to facts outside the testimony of witnesses or admitted exhibits was consistent with appellate case authority. Barry, 183 Wn.2d at 305.

9

evidentiary ruling prevents a defendant from presenting evidence that is the entirety of the defendant's case, then that evidence's probative value will outweigh nearly any state interest. Jones, 168 Wn.2d at 723-24. However, if a defendant is still able to offer relevant evidence to support his theory of the case, then his interest in the admission of particular information will be comparatively low. Arndt, 194 Wn.2d at 814.

Herein, while not permitted to present it in the form he preferred, Newbern was permitted to present all of the facts he sought to have admitted to support his theory that he was mistakenly identified.[5] This included his height, evidence of which was properly admitted in the form of sworn testimony on the record. The evidence on the record of his height was sufficient for Newbern's counsel to rely upon it in arguing to the jury that Newbern had been wrongly identified as the gunman. Thus, Newbern's "right to present a defense" was plainly not violated when the court denied him the opportunity to stand and show the jury his height.[6] Arndt, 194 Wn.2d at 814.

III

Newbern next argues that he was denied constitutionally effective counsel. This is so, he contends, "[t]o the extent defense counsel contributed to

---

[5] We note that after it first ruled that Newbern could not stand before the jury, the court asked Newbern's attorneys if they were confident that they had established a sufficient evidentiary record and offered the defense the opportunity to call more witnesses. Newbern's attorneys confirmed that they believed that they had the record they needed and declined to present any additional evidence.

[6] For similar reasons, we reject Newbern's contention that his "right to present a defense" was violated when the court did not allow him to show the jury his hand. The court gave Newbern ample opportunity to call additional witnesses, who could have testified about Newbern's missing finger. It was Newbern's choice not to call any witnesses to testify about his physical characteristics, so it cannot be said that the trial court denied him the "right to present a defense" with evidence about his missing finger.

[the court's error in excluding demeanor evidence] by not citing the relevant authorities supporting admission." We reject this contention. Newbern cannot prove that he suffered prejudice from his counsel's alleged contribution to the trial court's ruling because the court committed no error.

Both the United States Constitution and the Washington State Constitution guarantee criminal defendants the assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art I, § 22. The United States Supreme Court has recognized that the guarantee of assistance of counsel is, in fact, a "'right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

Contentions of constitutionally ineffective assistance of counsel present mixed questions of law and fact that we review de novo. State v. A.N.J., 168 Wn.2d 91, 109, 225 P.3d 956 (2010). We base our determination on the record established in the trial court. In re Pers. Restraint of Hutchinson, 147 Wn.2d 197, 206, 53 P.3d 17 (2002). "[T]he defendant must show both (1) deficient performance and (2) resulting prejudice to prevail on an ineffective assistance claim." State v. Estes, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017) (citing Strickland, 466 U.S. at 687).

While courts often determine whether a defense attorney's performance was deficient before addressing prejudice,

> there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [that] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether

11

counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

Strickland, 466 U.S. at 697.

To establish that any errors made by his counsel were prejudicial, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Instead, Newbern must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting Strickland, 466 U.S. at 694).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; Thomas, 109 Wn.2d at 226; [State v. ]Garrett, 124 Wn.2d [504, ]519[, 881 P.2d 185 (1994)]. In assessing prejudice, "a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to the law" and must "exclude the possibility of arbitrariness, whimsy, caprice, 'nullification' and the like." Strickland, 466 U.S. at 694-95.

State v. Grier, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011).

Newbern cannot establish that he was prejudiced by his counsel's failure to present the trial court with the Clark and Pitmon decisions. As explained above, neither case supports Newbern's argument that the trial court should have allowed him to stand for the jury. Thus, his contention that he was deprived

of his right to constitutionally effective assistance of counsel fails.  Estes, 188

Wn.2d at 457-58 (citing Strickland, 466 U.S. at 687).

IV

Finally, Newbern contends that the sentencing court improperly imposed

"supervision fees" as a condition of community custody.  We agree.  This court

has already considered a nearly identical situation in State v. Dillon, 12 Wn. App.

2d 133, 456 P.3d 1199 (2020).  We therefore follow Dillon and remand to the

superior court to strike Newbern's obligation to pay the supervision fees.  12 Wn.

App. 2d at 152 (citing State v. Lundstrom, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d

1116 (2018), review denied, 193 Wn.2d 1007 (2019)).

Affirmed in part and reversed in part.

WE CONCUR: