[No. 20946. Department One. September 6, 1928.]

THE STATE OF WASHINGTON, *Respondent*, v. EDDIE
FASICK, *Appellant*.[1]

*John F. Dore, Ralph A. Horr,* and *O. T. Webb,* for
appellant.

*Charles R. Denney, C. W. Jordan,* and *Ethan Allen
Peyser,* for respondent.

MITCHELL, J.—Eddie Fasick and his wife and Frank
Ryan were prosecuted upon an information charging
them with murder in the first degree, for the unlawful
premeditated killing of one Charles R. Harris, in
Snohomish county, Washington, on or about September
29, 1926. At the trial, the court directed a verdict in
favor of Ryan. Mrs. Fasick was found not guilty.
Eddie Fasick was found guilty of murder in the second
degree, and has appealed from a judgment and
sentence on the verdict.

The evidence was circumstantial. All of the parties
were residents of Seattle. The Fasicks and Harris had
been friendly, the men having been engaged in business

[1]Reported in 270 Pac. 123; 274 Pac. 712.

together. Harris was under the suspicion of having been connected with a robbery in Seattle and for some months had been out of this state. Upon his return to this state on September 23, he made his home with the appellant. Upon the arrival of Harris, appellant sought out a sergeant of the police force and asked if he wanted Harris. The sergeant said:

"Is that the fellow that is wanted on the American Bank robbery?"

Appellant replied: "You have made no mistake."

Appellant then told him that Harris was at his home but not to come after him until after three o'clock, because he (appellant) did not wish to be at home when Harris was arrested. Harris was arrested that afternoon and furnished bail two days later, September 27.

Appellant again sought the sergeant, at once, and telling him that he wanted to get rid of Harris for awhile, asked if it was not possible to "get Harris some time, I have to get him out of the way." The sergeant suggested a vagrancy charge against Harris and said, "Well, we ought to be able to give him three months anyway." To which appellant replied: "That would be fine if they could get him three months."

Upon being arrested this time, he was acquitted in the police court; and upon getting out, Harris went to the room of one McCoy, in the Victoria Hotel, about six o'clock p. m., September 29. A few minutes later, appellant arrived at the Victoria Hotel, and leaving his wife in the automobile, went into McCoy's room. After being in the room about ten minutes, appellant remarked to Harris, "It is time to be going," or words to that effect, as testified to by McCoy.

Upon their leaving, McCoy followed them out of the hotel and invited them to go to supper with him. They declined, saying they had their car and called his at-

tention to Mrs. Fasick in the car across the street. She and McCoy waved recognition to each other across the street. McCoy repeated his invitation to them, including Mrs. Fasick, to take supper with him. They declined again. Appellant and Harris walked across the street to the car. McCoy saw them standing by it. A moment or two later, McCoy looked back at the car as it started off north, in the direction of the Snohomish-King county line, with appellant, his wife and Harris in the car. Under the testimony in the case, that was the last time Harris was ever seen alive. That night, about 9:30 o'clock, appellant and his wife called on one George Vincent, at which time Mrs. Fasick said they had seen Harris leaving for the east.

Next day, September 30, 1926, appellant and his wife, who were out on bail pending their appeal from a conviction of the crime of robbery, went east and remained out of the state until they were due to commence their terms in the penitentiary for the robbery they had been convicted of, which was affirmed on appeal. *State v. Fasick,* 140 Wash. 198, 248 Pac. 284.

On November 11, 1926, Harris' body was accidentally found in the brush near a highway about a mile and a half over in Snohomish county, a short distance from Seattle. The condition of the body showed that he had been killed an appreciable length of time, the flesh of the face being in an advanced state of decay. There were blood signs or stains under or near the body of such appearance as to indicate that the blood was spilled before it coagulated. He had been killed by a bullet from a revolver, the bullet passing through his brain. The body was partially covered with fir branches apparently cut when alive. When the body of Harris was found, appellant was serving time in the pentitentiary.

Four months during the spring and summer of 1926,

one George Vincent roomed and boarded at the apartment of the Fasicks. He owned a knife used on his fishing trips, and while not so used, it was kept in a drawer with the Fasicks' tableware. He was not at the Fasick apartment September 27 to 30. While the Fasicks were in the East, their rental term on the apartment expired, whereupon Vincent rented two rooms elsewhere, one for the Fasicks and the other for himself, and moved the things belonging to Fasick, including their tableware and his own fishing knife, into their room. Upon their return, the Fasicks occupied the room prepared for them for about ten days before going to the penitentiary. After they left, Vincent, upon using the fishing knife, probably to peel an apple as he states, put it on the dresser in Fasick's room, where it was found the latter part of November by an officer who made a search of the room.

The knife was delivered to a detective, who went to the scene of the crime and cut off the ends of one or more of the fir branches that had covered the body of Harris, and with the fishing knife cut ten or twelve fresh fir branches. Then by the process of photomicrographs of the cut surfaces of the branches, he exposed the gaps or "nicks" as he termed them of the edge of the knife that cut the old branches and of the knife that cut the new branches, from which the jury was asked to conclude that both the old and new branches were cut with the same knife. The knife, and one each of the old and new fir branches, and a photomicrograph of each, were introduced in evidence over the objections of the appellant.

As to the argument generally on behalf of the appellant, we think there was sufficient circumstantial evidence to take the case to the jury as to who killed Harris, when he was killed, and where he was killed. *State v. Erving,* 19 Wash. 435, 53 Pac. 717.

There are several assignments of error on account of testimony admitted over appellant's objections. Upon examination of the record in this respect, there appears to have been no error, except in respects to be more fully mentioned. Certain instructions were excepted to, but, without setting them out, they were, in our opinion, correct statements of the law under the facts in the case. Other assignments arise upon exceptions to the refusal of the court to give requested instructions. To the extent such requested instructions were proper, we think the subjects were sufficiently covered by the instructions given.

We cannot agree, however, to the admission in evidence of the knife, the parts of fir branches showing surfaces of the cuts, and the photomicrographs. When the branches or boughs and knife were first offered in evidence, the trial court sustained an objection to them, and upon referring to the knife remarked:

"I will concede if it belonged to them (appellant) and the evidence were sufficient to justify the jury in speculating whether or not this was the knife that cut those boughs—and you haven't any case near that, either. I am talking about whether this evidence is admissible to show that these boughs were cut by this particular knife . . . Here is an ordinary knife, so far as anybody can see, and my personal opinion is that I couldn't tell in a thousand years whether those two pieces were cut by the same knife. It is true there may be some similarity."

The remarks of the trial court were, of course, made in the absence of the jury. Then, upon the state's showing that the knife, although belonging to George Vincent who was away from the appellant's home on September 29 and several days prior thereto, was in the possession and control of the appellant at his home, the court overruled the objections and let in the knife, the two cut boughs and photomicrographs.

In this we think the court committed error. Harris had not been killed with a knife. It was important only in connection with the cut surfaces on the boughs found over the body. Proof of possession of the knife by the appellant by his having it with his tableware at home could not overcome the pure speculation necessary to say that the boughs were cut with that knife. The condition of the knife was that of an ordinary fisherman's pocket knife. It had no distinctive individual markings on the edge, as compared with other knives of that kind. The witness who made the demonstration admitted he cut about a dozen boughs with the knife, the cuts of the most of which were enlarged by the microscope and photograph, but offered only one which one he said was similar to the one found at the body, and that the others were approximately the same. An examination of the two photomicrographs, one of the bough taken at the scene of the crime and the other cut by the witness, reminds one of the court's remark that you couldn't tell in a thousand years whether the two pieces were cut by the same knife.

It will not do to compare this kind of evidence with the shoe tracks of a person or a horse, nor with finger prints, because in those cases the thing making the impression comes to rest in making the impression. It may be admitted that an edged tool with gaps in it firmly set in machinery and driven through two pieces of wood of the same kind would make practically the same kind of impression on both pieces of wood. Not so, however, with a knife used by the hand. It is common knowledge that a knife with a faulty edge used in the right hand, one side of the blade being down, often makes a different impression on wood than if used in the left hand with the other side of the blade down.

Again, such a knife used in the hand will oftener than otherwise make a different impression upon wood cut by it whether tested by the microscope or not, according to whether it is forced through wood at right angles, with the point forward or with the point following and according to the angle of the slant of the knife with respect to the wood cut. There was no attempt in the evidence in this case to overcome these things. The knife, pieces of boughs and photomicrographs were, of course, strong invitations to the jury to guess, speculate and conjecture, but they fell far short in our opinion of being admissible. It was in our opinion reversible error to admit these articles in evidence.

Reversed, and remanded to the superior court with directions to grant a new trial.

PARKER, TOLMAN, and FRENCH, JJ., concur.

FULLERTON, C. J. (dissenting)—In my opinion, the articles the majority find objectionable were admissible as evidence. I therefore dissent from the conclusion reached.

### ON REHEARING.

[No. 20946. *En Banc.* February 11, 1929.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.

Judgment reversed.