[No. 5761-5-III. Division Three. May 23, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. STANLEY M. BERNSON, *Appellant.*

*John Matheson, Matheson & Matheson,* and *William D. McCool,* for appellant (appointed counsel for appeal).

*Curtis Ludwig, Prosecuting Attorney,* and *Darcy Scholts, Deputy,* for respondent.

THOMPSON, J.—Stanley M. Bernson appeals his conviction of first degree murder. We affirm.

On December 29, 1979, a hunter discovered the skeletal remains of Diann Remington, who disappeared about a year earlier on January 4, 1979. Her death was attributed to multiple stab wounds. On September 22, 1982, Mr. Bernson was charged with Ms. Remington's murder. A jury returned a guilty verdict and Mr. Bernson was sentenced to prison for life.

Mr. Bernson first contends there was insufficient evidence connecting him with Ms. Remington's death to support his conviction. The issue is whether, after viewing the evidence most favorable to the State, any rational trier of fact could have found the essential elements of first degree murder beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980). It is necessary to review the facts surrounding the victim's death in order to determine whether they are sufficient to satisfy the "reasonable doubt" rule. *See State v. Green, supra.* We, therefore, set forth the following:

Sometime during November or December 1978, Mr. Bernson offered Sherry Ann Wagoner a job selling women's apparel at a high salary plus a car. In December 1978, the victim, Ms. Remington, told a friend that she had been offered a job selling women's apparel at a salary in excess of $20,000 per year plus travel benefits. Ms. Remington told the friend the offer had come from a friend of her mother's. Ms. Remington, age 22, had met Mr. Bernson through her

mother. Prior to January 4, 1979, Mr. Bernson, in referring to Ms. Remington, told a co-worker, "I'd really like to get her." On January 4, 1979, Ms. Remington disappeared from her mother's home wearing a T–shirt, sweater, jeans and high heels. She left a note which read, "Mom, I will be back a little later, Diann, 3:30."

On January 26, 1979, Mr. Bernson offered 22–year–old Dina G. a job selling women's apparel at $2,000 per month plus a car. Mr. Bernson met Ms. G. after work to talk further about the job. During the conversation which occurred in Mr. Bernson's car, Mr. Bernson pulled a knife, forced Ms. G. to remove her clothes, and drove to a remote area. During an ensuing struggle, Ms. G. escaped, drove Mr. Bernson's car back to town, and filed a complaint with the police. On February 15, 1979, Mr. Bernson contacted Ms. Wagoner and asked her to meet him that evening to discuss the earlier job offer. Ms. Wagoner refused.

On December 29, 1979, Ms. Remington's remains were discovered by a hunter six–tenths of a mile from the spot where Mr. Bernson had assaulted Ms. G. The grave site was the exact location Mr. Bernson described to Ms. G. as a drop site used for small packages by Ms. G.'s prospective employer. The skeletal remains were scattered and the only clothing recovered after an extensive search of a 5–square– mile area was the T–shirt and sweater. A broken knife tip was found among the remains. The victim died of multiple stab wounds. No conclusion could be drawn from a detailed examination of the knife tip other than the grinding marks were similar to those on a knife allegedly given to Mr. Bernson. Finally, Mr. Bernson's job allowed him to be at the victim's home at the time of her disappearance on January 4, 1979.

▮ Mr. Bernson claims there is insufficient evidence to identify him as Ms. Remington's slayer. He relies on *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975) in drawing a distinction between types of circumstantial evidence, and claims he should not be convicted on circumstantial evidence which is not physical, *i.e.*, tangible, in nature. We

disagree. *State v. Gosby, supra,* stands for the rule that direct evidence is not necessarily more reliable than circumstantial evidence. *Gosby,* faced with an identity issue, upheld convictions based partially on inconsistent eyewitness testimony.

Circumstantial evidence has been held sufficient "to take the case to the jury as to who killed [the victim], when he was killed, and where he was killed". *State v. Fasick,* 149 Wash. 92, 95, 270 P. 123, 274 P. 712 (1928). *See also State v. Erving,* 19 Wash. 435, 440, 53 P. 717 (1898) (slayer's identity established beyond a reasonable doubt by evidence of defendant's familiarity with the locality where the crime was committed, and the fact that "the evidence tended very strongly to show that he had induced the deceased to accompany him . . . on the pretext that he would give him employment"). We hold Mr. Bernson's use of job offers to initiate meetings with young women, his familiarity with the remote area where the victim's body was discovered, his assault on one of those women with a knife, the sexual implications surrounding that assault and the circumstances surrounding Ms. Remington's murder, taken together, present sufficient evidence to allow the jury to conclude beyond a reasonable doubt that Mr. Bernson was the slayer.

Next, Mr. Bernson contends he was prejudiced by prosecutorial delay. He claims the particular facts of this case warrant application of federal and state speedy trial provisions to precharging delay. We disagree.

The right to a speedy trial does not accrue before prosecution commences; therefore, Mr. Bernson's claim of preaccusation delay is tested under the due process clause. *State v. Ansell,* 36 Wn. App. 492, 499, 675 P.2d 614, *review denied,* 101 Wn.2d 1006 (1984); *United States v. MacDonald,* 456 U.S. 1, 71 L. Ed. 2d 696, 102 S. Ct. 1497 (1982); *United States v. Marion,* 404 U.S. 307, 30 L. Ed. 2d 468, 92 S. Ct. 455 (1971); *State v. Madera,* 24 Wn. App. 354, 600 P.2d 1303 (1979); *State v. Haga,* 13 Wn. App. 630, 536 P.2d 648 (1975) (*Haga* II), *cert. denied,* 425 U.S. 959, 48 L. Ed.

2d 204, 96 S. Ct. 1740 (1976); *State v. Haga,* 8 Wn. App. 481, 507 P.2d 159 (*Haga* I), *review denied,* 82 Wn.2d 1006 (1973). Under this test, the accused must specifically demonstrate the delay caused actual prejudice to his defense. "The prejudice shown must be sufficient to overcome the legislative intent to prosecute the crime as evidenced by the absence of a statute of limitation." *State v. Ansell, supra* at 497; *Haga* I.

Mr. Bernson claims he was prejudiced by: (a) the police detective waiting until August 11, 1980, to check Mr. Bernson's alibi; and then limiting the investigation to show Mr. Bernson could have been at the Remington home by 3:30; (b) the relocation in June or July 1982 of the books and records of Mr. Bernson's Richland employer to Yakima where they were stored in a haphazard manner; and (c) the passage of time which precluded Mr. Bernson from establishing an alibi due to fading memories of potential witnesses. We will consider each claim of prejudice seriatim.

The police waited 8 months after the remains were discovered to investigate Mr. Bernson's movements on the day of Ms. Remington's disappearance. The rule which requires the State to preserve all potentially material and favorable evidence and to disclose potentially favorable evidence to the defendant does not include a requirement that the police or other investigators search for exculpatory evidence, conduct tests or exhaustively pursue every angle in a case. *State v. Judge,* 100 Wn.2d 706, 717, 675 P.2d 219 (1984); *State v. Jones,* 26 Wn. App. 551, 554, 614 P.2d 190, *review denied,* 94 Wn.2d 1008 (1980) (quoting *State v. Hall,* 22 Wn. App. 862, 866–67, 593 P.2d 554, *review denied,* 92 Wn.2d 1021 (1979)). Had the investigation divulged information that could establish an alibi for Mr. Bernson, the State would be obligated to disclose that discovery. But where, as here, the State terminated its investigation once establishing to its satisfaction that Mr. Bernson's job allowed him to be with the victim at the time of the disappearance, additional investigation for the benefit of the defendant was not mandated. The defendant is

required to come forward with evidence of an alibi once the State has established a prima facie case. *State v. Pam,* 1 Wn. App. 723, 463 P.2d 200 (1969), *cert. denied,* 400 U.S. 945 (1970); *State v. Rosi,* 120 Wash. 514, 208 P. 15 (1922).

Mr. Bernson claims prejudice in the removal of his employer's books and records from Richland approximately 2 months before he was charged with the crime. Mr. Bernson apparently claims prejudice because the materials were stored in a haphazard manner. However, we find no prejudice since these materials merely duplicate Mr. Bernson's order book which was introduced at trial by the State.

Mr. Bernson claims the passing of time has dimmed memories, thus causing prejudice. In *United States v. Marion,* the Supreme Court stated at pages 325–26:

> Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.

The possibility that memories will fade is not in itself sufficient to demonstrate prejudice. *State v. Ansell, supra; Haga* II. We find Mr. Bernson's claims of prejudice are not supported by the record.

Next, Mr. Bernson challenges a number of the trial court's evidentiary rulings.

 At trial the State's expert, William Morig, compared the knife tip found at the grave site with a knife similar to one allegedly given to Mr. Bernson. Mr. Morig's testimony at best established only that after comparing the two knives, the post–manufacture grinding marks were similar. Since Mr. Morig was unable to conclusively state the knives were similar (only a possibility), Mr. Bernson claims this evidence was unduly prejudicial since it permitted the jury to speculate that the murder weapon belonged to him. The testimony was relevant. Even so, ER 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Comment to ER 403 notes that in determining whether to exclude evidence under this rule, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction, and the availability of other means of proof. An expert's use of "could have" or "possibility" has been allowed in other cases where a less than exact scientific process is involved. *See State v. Bradfield,* 29 Wn. App. 679, 685, 630 P.2d 494, *review denied,* 96 Wn.2d 1018 (1981); *State v. Batten,* 17 Wn. App. 428, 437, 563 P.2d 1287, *review denied,* 89 Wn.2d 1001 (1977); *State v. Clark,* 156 Wash. 543, 287 P. 18 (1930).

Here, Mr. Morig likened the comparison of knives to that of hair samples, and stated that grind marks cannot be used like a ballistics examination because of the variability caused by movement of the grinder. It was not error to deny the motion to strike the testimony. The jury heard all of Mr. Morig's testimony, including the uncertainties of the identification, and could give his testimony what weight it saw fit. In applying ER 403 to potentially prejudicial evidence, the linchpin word is "unfair". In almost any instance, a defendant can complain that the admission of potentially incriminating evidence is prejudicial in that it may contribute to proving beyond a reasonable doubt he committed the crime with which he is charged. Addition of the word "unfair" to prejudice obligates the court to weigh the evidence in the context of the trial itself, bearing in mind fairness to both the State and defendant.

The purpose of opinion evidence is to assist the trier of fact in correctly understanding matters not within common experience. In addition to determining relevancy and weighing possible unfair prejudice, the court has a duty to see the jury is not likely to be misled. Once having decided Mr. Morig's testimony was admissible, the trial court prop-

erly gave a limiting instruction. In light of the manner in which Mr. Morig's testimony was presented and the limiting instruction, we are unable to find the jury was misled or the evidence was "unfairly" prejudicial to Mr. Bernson.

At trial, Ms. G. was allowed to give detailed testimony regarding the assault committed by Mr. Bernson. Although Mr. Bernson concedes this testimony was relevant, he claims it was extremely inflammatory and thus improperly admitted.

ER 404 provides:

**(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Comment to ER 404(b) states that this evidence should be admitted with extreme caution to avoid prejudice against the defendant. In *State v. Saltarelli*, 98 Wn.2d 358, 362, 655 P.2d 697 (1982), the court held evidence of prior crimes, wrongs, or acts may be admitted only when the following criteria are met: first, "the evidence must be shown to be logically relevant to a material issue before the jury"; and second, "if the evidence is relevant, its probative value must be shown to outweigh its potential for prejudice". Here, evidence of the assault was relevant to show the slayer's identity and a common scheme or plan. We hold the necessity of this evidence outweighed any unfair prejudice to Mr. Bernson.

At trial, Kirk Neuschwander, a co-worker of Mr. Bernson, was allowed to testify that Mr. Bernson had said of Ms. Remington, "I'd really like to get her." Mr. Bernson contends this testimony was highly prejudicial and improperly interjected a sexual contention into the case.

Evidence of a defendant's lustful disposition may be admitted under ER 404(b). However, "[e]vidence showing lustful disposition should only be admitted in a sex offense

case where it tends to show such lustful inclination toward the offended female." *State v. Whalon,* 1 Wn. App. 785, 794, 464 P.2d 730 (1970). *See also State v. Ferguson,* 100 Wn.2d 131, 667 P.2d 68 (1983). Mr. Bernson claims the State has made no showing that a sexual motive was involved in Ms. Remington's death. However, the circumstances under which the victim's remains were discovered indicates otherwise: the remote area; the state of undress; the victim was wearing jeans and shoes in addition to a T-shirt and sweater when she disappeared; but only the T-shirt and sweater were found after an extensive search; and only the victim's torso was clothed when discovered. These facts were sufficient to interject a sexual issue into the case and warrant the admission of Mr. Neuschwander's testimony into evidence.

At trial, Dale Anderson was permitted to testify that shortly before Ms. Remington's disappearance she told him that she had received a job offer to sell women's apparel. Mr. Bernson contends the victim's statements are inadmissible hearsay, and further, that admission of this evidence violated his Sixth Amendment right to confront an adverse witness.

A victim's out-of-court statements which tend to prove a plan, design, or intention of the declarant are admissible under ER 803(a)(3). *See* E. Cleary, *McCormick on Evidence* § 295 (3d ed. 1984). Here, Mr. Anderson's testimony was admissible to show the victim's state of mind and her plan. "The only limitations as to the use of such statements . . . are that the statements must be of a present existing state of mind and must appear to have been made in a natural manner and not under circumstances of suspicion". *Ford v. United Bhd. of Carpenters,* 50 Wn.2d 832, 837, 315 P.2d 299 (1957). *See also State v. Smith,* 85 Wn.2d 840, 854, 540 P.2d 424 (1975). At the time of the statement, a few weeks prior to her disappearance, Ms. Remington was visiting the Andersons and had known Mr. Anderson for 2½ years. It was natural for Ms. Remington to make such statements in response to a friend's concern that she

needed "a sense of direction" in her life. The fact that Ms. Remington subsequently moved to the area of expected future employment tends to corroborate her statement.

▆ Mr. Bernson also claims admission of this evidence violated his right to confront an adverse witness. The admissibility of hearsay against a defendant in a criminal case is subject to overriding constitutional considerations. "The sixth amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution to confront witnesses against him." *State v. Parris,* 98 Wn.2d 140, 144, 654 P.2d 77 (1982). When hearsay is admitted, this constitutional guaranty requires a determination of "(1) reliability of the testimony sought to be admitted, and (2) availability of the source (the out–of–court declarant) to appear, swear, and be cross–examined". *State v. Smith, supra* at 849. Ms. Remington's death satisfies the requirement of unavailability. The concern is, therefore, with the reliability of the statements.

"Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *State v. Parris, supra* at 145 (quoting *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980)). Here, the statements clearly fell within the ambit of ER 803(a)(3),[1] a hearsay exception which is well recognized in Washington. *See State v. Smith, supra* at 854, and citations. We find no error in the admission of this evidence.

At trial, Mr. Bernson offered out–of–court statements made to him by Louis Kahala. It was Mr. Bernson's contention that Mr. Kahala was the source of the job offer, and

---

[1] ER 803(a)(3):

"(a) **Specific Exceptions.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

". . .

"(3) *Then Existing Mental, Emotional, or Physical Condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

he was merely acting in conformity with Mr. Kahala's information when he offered jobs to Ms. Wagoner and Ms. G. The State objected to this evidence as hearsay. However, Mr. Bernson was allowed to testify to the following:

Q Mr. Bernson, who told you about a job opportunity?
A Mr. Kahala.

. . .

Q Mr. Bernson, did you relate whatever kind of a job opportunity it was that Mr. Kahala told you about to other individuals?
A Yes, I did.
Q Was Sherry Wagoner one of those people?
A Yes, she was.

Mr. Bernson contends his ability to present a defense was prejudiced because he was not permitted to give a more detailed description of Mr. Kahala's statements. Although limitations on Mr. Bernson's testimony may have been more restrictive than necessary, he was able to present the out–of–court statement for his intended purpose. We find no error.

 Next, Mr. Bernson contends that when the court denied his challenges for cause directed at juror Duane Moe, it effectively deprived him of his right to a fair trial under the sixth and fourteenth amendments to the United States Constitution, and article 1, section 22 of the Washington Constitution. Initially, it should be noted granting or denying a challenge for cause is within the trial court's discretion and will not constitute reversible error in the absence of a manifest abuse of discretion. *State v. Gilcrist,* 91 Wn.2d 603, 611, 590 P.2d 809 (1979). Addressing the specifics of Mr. Bernson's contentions:

> A refusal to sustain challenges for proper cause, necessitating peremptory challenges on the part of the accused, will be considered on appeal as prejudicial where the accused has been compelled subsequently to exhaust all his peremptory challenges before the final selection of the jury.

*State v. Parnell,* 77 Wn.2d 503, 508, 463 P.2d 134 (1969) (quoting *State v. Stentz,* 30 Wash. 134, 70 P. 241 (1902)).

During voir dire, the court excused three jurors for cause but denied Mr. Bernson's challenge for cause of Mr. Moe. As a result Mr. Bernson had to use one of his challenges to remove Mr. Moe and thus exhausted his peremptory challenges. Mr. Bernson claims Mr. Moe's personal reservations and involvement with the Benton County criminal justice system affected his impartiality. "A prospective juror must be excused for cause if the trial court determines the juror is actually or impliedly biased." *State v. Gosser,* 33 Wn. App. 428, 433, 656 P.2d 514 (1982); RCW 4.44.170. Actual bias is defined in RCW 4.44.170(2) as

> the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this code as actual bias.

Here, the court after extensive voir dire determined Mr. Moe had no actual bias. Mr. Bernson concedes there was no showing of actual bias, but argues Mr. Moe's employment in a state correctional facility for juveniles shows implied bias. "Implied bias . . . arises when a juror has some relationship with either party; with the case itself; or has served as a juror in the same or a related action." *State v. Latham,* 100 Wn.2d 59, 63, 667 P.2d 56 (1983); RCW 4.44-.180.

In *Latham,* the court held it was not error to deny the defendant's challenge since the challenged jurors agreed to lay aside opinions, had no specific knowledge about the crime charged or defendant's case, and promised to base the verdict solely on the evidence presented at trial. The voir dire of Mr. Moe shows he met each of these requirements. Finally, the use of a peremptory challenge to remove a juror who should have been removed for cause "cures" the error unless defendant can show the use of the peremptory challenge actually prejudiced his case. *State v. Latham, supra* at 64. Mr. Bernson has failed to show such prejudice. We find no error.

 Mr. Bernson contends the trial court abused its discretion when it permitted a jury view. It is within the trial court's discretion to permit a jury view. *State v. Holden,* 75 Wn.2d 413, 451 P.2d 666 (1969). The decision to permit a view is reviewable only for abuse. *State v. Stoudamire,* 30 Wn. App. 41, 46, 631 P.2d 1028, *review denied,* 96 Wn.2d 1011 (1981). CrR 6.9 provides:

> The court may allow the jury to view the place in which any material fact occurred. In such event it shall order the jury to be conducted in a body, in the custody of a proper officer of the court to the place which shall be shown to them by the judge. The defendant shall be present at the view. During the view, no person other than the judge or person authorized by him shall speak to the jury on any subject relating to the trial.

Mr. Bernson claims this rule was violated when a person other than the judge, or one authorized by him, talked to the jury during the view. However, the record reveals this incident consisted merely of a juror talking to himself.

Mr. Bernson also contends the court erred by permitting the jury to view the crime scene because the prejudicial effect outweighed the probative value. *State v. Stoudamire, supra* at 46. "A jury view of a crime scene is a means of helping the jury to understand the evidence, and is not itself evidence." *State v. Stoudamire, supra* at 46. Here, the court deemed the view permissible to aid the jury in understanding the logistics of the crime scene, and the court properly instructed the jury that the view did not constitute evidence. Accordingly, we find no error.

Affirmed.

GREEN, C.J., and MUNSON, J., concur.

After modification, further reconsideration denied June 27, 1985.

Review denied by Supreme Court September 20, 1985.