**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 68974-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| FLOYD A. TYLER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 18, 2013 |
| | ) | |

LAU, J. — Floyd Tyler appeals his first degree child rape conviction. He contends that defense counsel provided ineffective assistance by failing to object when the State elicited testimony from two police officers that he admittedly ejaculated 10 to 15 minutes after engaging in sexual intercourse with the victim. Because the trial court likely would have overruled Tyler's proposed relevance and unfair prejudice objections, we reject his ineffective assistance claims and affirm his conviction.

## FACTS

Eight year old KG and her two younger sisters lived with their mother, their aunt, the aunt's boyfriend, Tyler, and Tyler's son. One night, the mother and aunt left the children in Tyler's care. While watching television with KG, Tyler suggested that he and

KG play a game called "Truth or Dare." Verbatim Report of Proceedings (May 10, 2012) (VRP) at 358. Tyler initially proposed "simple" dares but later suggested that KG put his penis in her mouth. According to KG, Tyler unzipped his pants, told her to open her mouth, and placed his penis inside. He then pulled down KG's pants and placed his mouth on her "privates" for a few seconds. KG left the room and played with her sisters and cousin in the adjoining hallway.

Tyler later called KG into another room. When KG entered the room, she found Tyler sitting down with the lights off. According to KG, Tyler pulled down her pants and underwear and placed her on his lap. KG testified that she could feel Tyler's "bare penis" on her butt. VRP at 365. When asked at trial where on her butt she felt Tyler's penis, she said, "I believe my butt hole." VRP at 366. She stated, "I believe I felt a pinch, but I'm not certain. I know it didn't—it felt bad like it didn't—it hurt." VRP at 366. One of KG's sisters interrupted Tyler when she ran into the room crying. KG jumped up, pulled up her pants, and ran out of the room. She testified that she could not recall what happened after she left the room.

When KG was 14 years old, she spoke to her mother about the incident. Her mother reported the incident to the police. Tyler initially denied any wrongdoing. During a follow-up interview, however, he acknowledged that some sexual contact occurred. City of Kent Detective Steven Kelly conducted the follow-up interview. At trial, he testified that Tyler blamed KG for initiating contact:

> Q. [Prosecutor:] Now, after [Tyler] told you what his understanding of the allegations were, did he make any statements about whether those things actually did happen?
> A. [Detective Kelly:] Yes.
> Q. And what did he say about that at first?

       A.  That [KG] never touched his penis with her mouth.

. . . .

       Q.  And what did he later say about what had happened?

       A.  That it did occur.

       Q.  Did he say anything more specific about it occurring?

       A.  Yes.  [Tyler] said that [KG] wanted to and he said no, that [KG] pretty much forced herself on him.  That he knew it was wrong; that she grabbed his penis after pulling his pants down . . . and that when [KG] put [her] lips on his penis, he said no, pulled that [sic] up his pants, left the room, and went down stairs; and that he did not talk with [KG] about the incident again.

VRP at 307-08.  Detective Kelly also testified that Tyler admittedly masturbated to

ejaculation shortly after the encounter with KG:

       Q.  [Prosecutor:]  Did you ask [Tyler] any further questions about the incident after confirming that you had the summary [of his interview statement] correct?

       A.  [Detective Kelly:] Yes, I did.

       Q.  And what did you ask him?

       A.  I asked if he ejaculated with [KG], and he said he had not.

       Q.  Did he indicate to you that he had ejaculated at any point shortly thereafter?

       A.  Yes, he did.

       Q.  Tell me what he said.

       A.  He said about 10 to 15 minutes later, when [KG] was not around, he masturbated to ejaculation.

VRP at 309-10.  Defense counsel raised no objection to this line of questioning.

Detective Gerald Gee watched Tyler's follow-up interview with Detective Kelly

through a one-way window.  At trial, the State elicited additional testimony from

Detective Gee regarding Tyler's admitted ejaculation:

       Q.  [Prosecutor:]  And I guess, what did the Defendant first say in that interview [with Detective Kelly] about what had happened?

       A.  [Detective Gee:]  I don't know when—it was sometime during the interview [Tyler] stated that he had—or that [KG]—he was playing a video game and [KG] had pulled his pants down and his underwear down and put her lips on his penis.

       Q.  When you say sometime during the interview.  In the initial portion of the interview what was he saying about the incident?

       A.  He was denying it.

Q. So then some time into the interview he makes those statements. Did he make other statements about what had happened to [KG]?

A. He made a statement about—Detective Kelly asked [Tyler] if he ejaculates and [Tyler] stated no, but then a few minutes later he stated that he did after he masturbated.

First he stated he ejaculated later that evening with [KG's mother], but then added—said that he ejaculated, I think it was like ten minutes after that, after the incident with [KG].

VRP at 411-12. Again, defense counsel raised no objection.

Tyler did not testify. The jury returned a guilty verdict on the sole charge of first degree child rape, and the court imposed a standard range sentence. Tyler appeals.

## ANALYSIS

Tyler contends that defense counsel rendered ineffective assistance by failing to object when the State elicited testimony from Detectives Kelly and Gee that, during the follow-up interview, Tyler admitted to ejaculating shortly after his encounter with KG. He argues that counsel should have objected on grounds of relevance and unfair prejudice. For the reasons discussed below, this argument fails.

"The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel." State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Where the defendant claims ineffective assistance based on counsel's failure to challenge the admission of evidence, he or she must show "that not objecting fell below prevailing professional norms, that the proposed objection would likely have been sustained, and that the result of the trial would have been different if the evidence had not been admitted." In re Pers. Restraint of Davis, 152 Wn.2d 647, 714, 101 P.3d 1 (2004) (footnotes omitted). "There is a strong presumption that trial counsel's performance was adequate, and exceptional

-4-

deference must be given when evaluating counsel's strategic decisions." State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). "[A]lthough the presumption of effectiveness can fail if there is no legitimate tactical explanation for counsel's actions, there is no ineffectiveness if a challenge to admissibility of evidence would have failed." State v. Nichols, 161 Wn.2d 1, 14-15, 162 P.3d 1122 (2007) (citations omitted).

Tyler's proposed relevance and unfair prejudice objections likely would have been overruled. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by [the Rules of Evidence], or by other rules or regulations applicable in the courts of this state." ER 402. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403. "[T]he threshold for relevance is extremely low under ER 401 . . . ." City of Kennewick v. Day, 142 Wn.2d 1, 8, 11 P.3d 304 (2000). Relevance merely requires a "logical nexus" between the evidence and the fact to be established. State v. Peterson, 35 Wn. App. 481, 484, 667 P.2d 645 (1983).

During his follow-up interview, Tyler initially told Detective Kelly that the alleged wrongdoing never occurred. Though he later admitted that some sexual contact occurred, he claimed that KG "pretty much forced herself on him" and that, when KG put her lips on his penis, he said "no," pulled up his pants, and left the room. VRP at 308. The fact that Tyler admittedly ejaculated 10 to 15 minutes after the encounter with KG

makes it considerably less probable that his eight-year-old victim forcefully initiated unwanted sexual intercourse. It also undermines Tyler's assertion that he immediately terminated the encounter by saying "no" and walking away. Further, as Tyler acknowledges in his brief, "[T]he evidence gave jurors an explanation for why Tyler would engage in such conduct: it excited him, aroused him, 'turned him on.'" Br. of Appellant at 8 (emphasis in original). Because the evidence easily meets ER 401's low threshold, any relevancy objection likely would have been overruled.

While evidence that Tyler ejaculated shortly after the incident was certainly damaging to the defense case, it was not unfairly prejudicial. Evidence is unfairly prejudicial when it carries "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." State v. Hanson, 46 Wn. App. 656, 731 P.2d 1140 (1987); see also State v. Powell, 126 Wn.2d 244, 264, 893 P.2d 615 (1995) (danger of unfair prejudice exists when evidence is likely to stimulate an emotional rather than a rational response). "[T]he linchpin word is 'unfair.'" State v. Bernson, 40 Wn. App. 729, 736, 700 P.2d 758 (1985). Here, the evidence at issue helped the jury rationally evaluate Tyler's assertion that KG "pretty much forced herself on him." VRP at 308. The evidence was particularly probative in light of Tyler's general denial of the charge. Bernson, 40 Wn. App. at 736 ("Addition of the word 'unfair' to prejudice obligates the court to weigh the evidence in the context of the trial itself, bearing in mind fairness to both the State and defendant."). As with Tyler's proposed relevancy objection, any objection on the basis of unfair prejudice likely would have been overruled.

Because Tyler has not demonstrated that his proposed evidentiary objections "would likely have been sustained," we reject his ineffective assistance claims. <u>Davis</u>, 152 Wn.2d at 714. We affirm his first degree child rape conviction.

WE CONCUR: