# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | | |
|---|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72765-6-I | |
| | ) | | |
| Respondent, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| TRAVIS EUGENE RINEHART, | ) | UNPUBLISHED OPINION | |
| | ) | | |
| Appellant. | ) | FILED: March 16, 2015 | |
| | ) | | |

2015 MAR 16 AM 9: 11

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

VERELLEN, A.C.J. — Travis Rinehart appeals his conviction for second degree assault, based on suffocation of his girlfriend. He contends that he was denied a fair trial by the trial court's admission of a prior incident where he suffocated his girlfriend in the same manner and by counsel's failure to object to the prosecutor's reference to this prior incident in closing argument. Because the evidence was properly admitted under ER 404(b) and Rinehart fails to show that the trial court abused its discretion by finding that the probative value of this evidence was outweighed by any unfair prejudice, we find no error in the court's admission of the evidence. And because the prosecutor's remark was consistent with the court's instruction limiting the jury's consideration of that evidence, there is no basis for the claim of ineffective assistance of counsel. Accordingly, we affirm.

FACTS

On the evening of June 21, 2013, Suzanne McKee and her boyfriend Travis Rinehart were at McKee's apartment. Around 9:00 p.m., while Rinehart was asleep on the couch, McKee left the apartment and went to a tavern to make a phone call and use her laptop computer. She returned to the apartment around 10:45 p.m.

After she returned, Rinehart woke up and asked where she had been. When she told him where she was, Rinehart became angry and told her "Don't ever leave the house when I'm sleeping again."[1] The two began to argue, and McKee eventually decided to go for a walk. She went to change her clothes and told Rinehart she was leaving. Rinehart told her not to take his tobacco and rolling papers and an argument ensued.

Rinehart then jumped off the bed and ran at McKee. McKee yelled to get her neighbors' attention. Rinehart grabbed McKee by the neck, threw her down on the floor, and jumped on top of her. He pinned her arms down with his legs and put both of his hands over her mouth "very hard' and "very tight."[2] McKee could not breathe for what seemed to her as a "really long time."[3] She became dizzy and weak and involuntarily urinated in her pants. Rinehart then kept one hand over her mouth while he used the other to punch her in the ribs. During this time, McKee managed to yell out a few times.

Stephanie Cox, who lived in the apartment below, was watching TV with Jack Wohl when they heard a loud crash against the ceiling. Cox yelled to a neighbor to call

---

[1] Report of Proceedings (RP) (Sept. 4, 2013) at 28.

[2] Id. at 32.

[3] Id.

911. Christopher Jeanette was in his backyard when his girlfriend told him that a woman was crying for help and saying that a man was trying to kill her. Jeanette and Wohl went to McKee's apartment and heard McKee yelling for help. Wohl and Jeanette pounded on the door and demanded that it be opened.

Rinehart eventually opened the door and tried to tell them everything was okay. McKee yelled for them not to leave. Rinehart had blood on his hands and McKee was lying on the floor. McKee had blood on her face and her neck was red. She screamed that Rinehart was trying to kill her. Wohl and Jeanette eventually forcibly moved Rinehart into the hallway.

Once in the hallway, Wohl and Jeanette told Rinehart they were making a "citizens' arrest."[4] They would not let Rinehart leave, and Rinehart eventually pushed Jeanette in an attempt to escape. Jeanette wrestled with Rinehart, and he and Wohl were able to detain Rinehart until police arrived.

The State charged Rinehart with second degree assault, unlawful imprisonment, and third degree assault.[5] Rinehart testified on his own behalf and admitted that he hit McKee, but denied blocking her breathing. He claimed that he put his hand in front of her mouth to prevent her from spitting on him and screaming, she bit his hand, and he then threw her on the floor. He testified that he was just trying to her to keep quiet so the neighbors would not call the police. He explained that he was worried he would be arrested on a warrant for failing to undergo a domestic violence evaluation related to his prior assault of McKee.

---

[4] Id. at 71, 89.

[5] The third degree assault charge was alleged to have been committed against Jeanette.

After Rinehart testified, the State sought to recall McKee to testify in rebuttal about two prior incidents where Rinehart had obstructed her ability to breathe. The court excused the jury and heard McKee's testimony about these incidents; one that occurred in a trailer when he tried to suffocate her and one that occurred in a cabin when he tried to strangle her. The court found by a preponderance of the evidence that the suffocation incident in the trailer had occurred, and concluded that it was admissible under ER 404(b), ruling that

> [i]lt is admissible . . . under opportunity, intent, knowledge, or absence of mistake. Here the Defendant denied he suffocated Ms. McKee but he does, in fact, say that he put his hand to her face so close that Ms. McKee bit his hand. Maybe if he said he never touched her or approached or something[,] maybe it would be a little different. But, whether that hand in turn suffocated her again, by mistake, accident, whatever it may be, that this testimony would go to that. The testimony is intended to contradict that testimony that has been presented by the Defendant here by showing on the prior occasion that will be admitted the Defendant did suffocate Ms. McKee, that he had the motive[,] and that it was not a mistake or accident [o]r in this case, it didn't happen at all, as he has testified. This goes to it being a showing of hostile relationship between the Defendant and Ms. McKee. Both have testified about it being a rocky nature--about the rocky nature of this relationship. The testimony is admissible under the case law cited by counsel except as it is not for the purpose of showing propensity or fear. Fear is not an issue here. It is to rebut the Defendant's statement where he denies suffocation . . . . It is also admissible as relevant necessary [sic] to assess Ms. McKee's credibility . . . . The probative value does outweigh the danger of any unfair prejudice with the giving of an instruction. So, an instruction will be given.[6]

The court ruled that evidence of the incident in the cabin was not admissible.

The jury was instructed:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of Suzanne McKee's testimony claiming the defendant obstructed her ability to breathe on a prior occasion and may be considered by you only for the purposes of assessing the defendant's credibility, intent, knowledge, absence of mistake, or for

---

[6] RP (Sept. 5, 2013) at 206-07.

4

assessing the credibility of Suzanne McKee. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.[7]

Rinehart was found guilty of second degree assault and unlawful imprisonment, but not guilty of third degree assault. The court sentenced him to a standard range sentence.

Rinehart appeals.

## ANALYSIS

Rinehart contends that he was denied a fair trial by the trial court's admission of the prior suffocation incident because it was unduly prejudicial. He further contends that he was denied effective assistance of counsel when his attorney failed to object to the prosecutor's reference to this prior incident as evidence of propensity. We find no merit in either contention.

### ER 404(b) Evidence

We review a trial court's ruling on the admissibility of evidence under ER 404(b) for an abuse of discretion.[8] ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

To admit evidence of prior misconduct under ER 404(b),

> the court must (1) find by a preponderance of the evidence that the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element

---

[7] Clerk's Papers at 28.

[8] State v. Baldwin, 109 Wn. App. 516, 528, 37 P.3d 1220 (2001).

5

of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence.[9]

The court must also identify the purpose of the evidence and conduct the balancing on the record.[10]

Rinehart contends that the trial court erred by finding the evidence more probative than prejudicial. He does not appear to challenge the basis for the trial court's decision to admit the evidence under ER 404(b), but focuses solely on the court's ER 403 analysis of probative value versus prejudicial effect.[11] ER 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The linchpin of the prejudice analysis in this context is the word "unfair."[12] While almost all evidence is prejudicial because it is used to persuade the fact finder to reach one conclusion over another, unfair prejudice "is caused by evidence that is likely to arouse an emotional response rather than a rational decision among the jurors."[13]

Rinehart fails to show that this evidence elicited an emotional response that impacted the jury's ability to reach a rational decision. The court gave a limiting instruction that properly confined the jury's consideration of this evidence and the jury is

---

[9] State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009).

[10] State v. Jackson, 102 Wn.2d 689, 693-94, 689 P.2d 76 (1984).

[11] Indeed, the trial court's ruling is entirely consistent with State v. Baker, 162 Wn. App. 468, 259 P.3d 270 (2011), where evidence of prior domestic violence assaults were properly admitted under ER 404(b) to show lack of mistake when defendant was charged with strangling with the victim but claimed that he merely put his hand over her mouth.

[12] State v. Rice, 48 Wn. App. 7, 13, 737 P.2d 726 (1987) (quoting State v. Benson, 40 Wn. App. 729, 736, 700 P.2d 758 (1985)).

[13] Id.

presumed to follow the court's instructions.[14] The jury also already heard evidence from Rinehart himself that he had assaulted McKee in the past, when he testified that he was trying to prevent her from screaming because he did not want to be arrested on a warrant associated with his prior assault on McKee. Finally, the facts of the prior incident were no more shocking than the facts of the charged incident that the jury had already heard. Rinehart fails to show that the trial court abused its discretion by finding that the probative value of this evidence outweighed any prejudicial effect.

### Ineffective Assistance of Counsel

Rinehart next contends that he was denied effective assistance of counsel by his attorney's failure to object when the prosecutor referred in closing argument to the prior suffocation incident. He contends that the prosecutor improperly argued that this incident was evidence of his propensity to commit these types of crimes. We disagree.

To prevail on a claim of ineffective assistance of counsel, the defendant must show that trial counsel's performance was deficient and that prejudice resulted from the deficiency.[15] "Where a claim of ineffective assistance of counsel rests on trial counsel's failure to object, a defendant must show that an objection would likely have been sustained."[16]

Rinehart contends that counsel was ineffective by failing to object to the following comments the prosecutor made during closing argument:

> And then, in addition to that, he had to intend to obstruct the other person's ability to breathe. And . . . he's denying he put his hands over

---

[14] State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001).

[15] Strickland v. Washington, 446 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).

[16] State v. Fortun-Cebada, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

her mouth and nose. He's denying that. He's saying he just held them up. But, he admits that if you block someone's ability to make noise and put your hands over their mouth, you're also going to be obstructing their ability to breathe. It doesn't say that you end their life or absolutely obstruct their ability to breathe at all. It just says, "Obstructs it." And, he doesn't get to put his hands over mouth. He doesn't get to obstruct her ability to breathe. Really[,] what right does he have to stop her from yelling? I mean, that's not self-defense, that's just blocking a person from, you know, expressing themselves and there's no legal authority to do that that you will find in these instructions. So yeah, he had the intent. And you know, we also heard that this isn't the first time this has happened. There was a prior incident. And, that tells us a lot about his intent and his claim that he didn't do this.[17]

Rinehart fails to show that these comments were improper and warranted an objection. Consequently, his claim of ineffective assistance of counsel is without basis.

A prosecutor has wide latitude in closing argument to draw and express reasonable inferences from the evidence.[18] We review allegedly improper argument in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and instructions given by the court.[19]

Rinehart argues that "[a]lthough clothed in language of 'intent,' the substance of this argument was that the defendant must be guilty of the charge in this case because he did it in the past."[20] But viewed in context, the prosecutor's closing argument relied on prior behavior to counter Rinehart's claims rather than to prove conformity. The prosecutor made these comments in reference to the jury instruction defining "suffocation," which stated, "Suffocation means to block or impair a person's intake of

---

[17] RP (Sept. 5, 2013) at 257-58.

[18] State v. Hoffman, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991).

[19] State v. Gregory, 158 Wn.2d 759, 810, 147 P.3d 1201 (2006), overruled on other grounds by State v. W.R., Jr., 181 Wn.2d 757, 336 P.3d 1134 (2014).

[20] Br. of Appellant at 22.

air at the nose and mouth, whether by smothering or other means, with the intent to obstruct the person's ability to breathe."[21] The prosecutor was focusing on the State's proof of Rinehart's intent to obstruct and properly argued that evidence of the prior suffocation incident rebuts his claim that he did not intend to obstruct her breathing, i.e., that he was simply covering her mouth to keep her from yelling. Additionally, the jury was given a proper limiting instruction and was also instructed to disregard any remarks by the lawyers not supported by the law in the instructions. The jury is presumed to follow the court's instructions.[22] Rinehart fails to show that the prosecutor's remarks were improper, warranting an objection from counsel. Thus, his claim of ineffective assistance of counsel fails.

We affirm.

WE CONCUR:

_Trickey, J_

_Becker, J._

---

[21] Clerk's Papers at 33.

[22] Stein, 144 Wn.2d at 247.